**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| TRANSPERFECT GLOBAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0065-KSJM |
| | ) | |
| ROSS ARONSTAM & MORITZ LLP and | ) | |
| GARRETT B. MORITZ, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Date Submitted: December 16, 2021
Date Decided: March 17, 2022

Frank E. Noyes, II, OFFIT KURMAN, P.A., Wilmington, Delaware; Douglas Capuder, CAPUDER FAZIO GIACOIA LLP, New York, New York; *Counsel for Plaintiff TransPerfect Global, Inc.*

David E. Ross, Bradley R. Aronstam, Eric D. Selden, S. Michael Sirkin, Adam D. Gold, Benjamin Z. Grossberg, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; *Counsel for Ross Aronstam & Moritz LLP and Garrett B. Moritz.*

**McCORMICK, C.**

This is a spin-off novella of the TransPerfect saga, the background of which should be familiar to even the most casual reader of Chancery opinions.[1] The exposition is that, after TransPerfect co-founders Elizabeth Elting and Philip Shawe deadlocked at the board and stockholder level, this court granted Elting's request to appoint a custodian. The custodian ran a sales process, and Shawe acquired Elting's shares of TransPerfect at the conclusion of that process.

In this episode, Shawe-owned TransPerfect has sued its former attorneys who were hired by the custodian to defend the company in collateral litigation initiated by Shawe's mother. The attorneys successfully defended the company, but Shawe claims that the

---

[1] *See In re TransPerfect Glob., Inc.*, 2021 WL 1711797 (Del. Ch. Apr. 30, 2021) (granting in part custodian's fee petitions); *In re TransPerfect Glob., Inc.*, 2021 WL 1401518 (Del. Ch. Apr. 14, 2021) (granting the custodian's motion for an order of discharge); *In re TransPerfect Glob., Inc.*, 2019 WL 5260362 (Del. Ch. Oct. 17, 2019) (granting custodian's motion for civil contempt and sanctions against TransPerfect and Philip Shawe), *appeal dismissed sub nom. TransPerfect Glob., Inc. v. Pincus*, 224 A.3d 203 (Del. 2019) (TABLE), *cert. denied*, 2019 WL 6130807 (Del. Ch. Nov. 18, 2019); *In re TransPerfect Glob., Inc.*, 2018 WL 904160 (Del. Ch. Feb. 15, 2018) (approving the custodian-recommended transaction whereby Philip Shawe acquired Elting's shares of TransPerfect), *aff'd sub nom. Elting v. Shawe*, 185 A.3d 694 (Del. 2018) (TABLE); *In re TransPerfect Glob., Inc.*, 2017 WL 3499921 (Del. Ch. Aug. 4, 2017) (granting Elting's motion to enforce the Sale Order and denying Shirley Shawe's motion for expedited proceedings seeking a meeting of TransPerfect stockholders); *In re Shawe & Elting LLC*, 2016 WL 3951339 (Del. Ch. July 20, 2016) (granting Elting's motion for sanctions against Philip Shawe for his actions to obstruct discovery, conceal the truth, and impede the administration of justice), *aff'd sub nom. Shawe v. Elting*, 157 A.3d 142 (Del. 2017); *In re TransPerfect Glob., Inc.*, 2016 WL 3949840 (Del. Ch. July 18, 2016) ("Sale Order"); *In re TransPerfect Glob., Inc.*, 2016 WL 3477217 (Del. Ch. June 20, 2016, revised June 21, 2016) (approving the custodian's proposed plan of sale of TransPerfect); *Shawe v. Elting*, 2015 WL 5167835 (Del. Ch. Sept. 2, 2015) (denying Shirley Shawe's motion to intervene); *In re Shawe & Elting LLC*, 2015 WL 4874733 (Del. Ch. Aug. 13, 2015) (entering post-trial judgment in favor of Elting on her claim for the appointment of a custodian over TransPerfect), *aff'd sub nom. Shawe v. Elting*, 157 A.3d 152 (Del. 2017).

custodian labored under a conflict of interest arising from the fees that the company was paying him for his services. According to Shawe, the attorneys who answered to the custodian should have identified that conflict but failed to do so.

Shawe caused the company to file a legal malpractice claim against the attorneys in New York. To redirect the New York litigation to this setting, the attorneys intervened in the primary Delaware TransPerfect litigation to file a contempt motion against the company. The attorneys argued that the New York action violated exclusive jurisdictional provisions of various orders of this court. In response, the company amended its New York complaint to remove the equitable claims it asserted there, stayed that action, and filed this suit.

In a twist of Shyamalan-ian proportions, the company has moved to dismiss its own complaint for lack of subject matter jurisdiction, concerned over the preclusive effect that a judgment on the merits may have on the New York action. The defendants have likewise moved to dismiss the complaint for failure to state a claim, arguing that the company cannot identify a professional obligation that they breached by following the custodian's instructions and successfully defending the company.

This decision finds that the court may properly exercise subject matter jurisdiction over this action and that the complaint fails to state a claim. The company's motion to dismiss is denied. The defendants' motion to dismiss is granted.

## I. FACTUAL BACKGROUND

Unless otherwise stated, the facts are drawn from the Verified Complaint, exhibits thereto, and documents incorporated by reference.[2]

### A. The Sale Order

In May 2014, Elizabeth Elting, who at the time owned 50% of the stock of TransPerfect Global, Inc. ("TransPerfect" or the "Company"), filed a petition seeking appointment of a custodian of TransPerfect. The petition sought to resolve deadlocks at both the board and stockholder levels between herself and Philip Shawe, who owned the other 50% of the stock with his mother, Shirley Shawe.[3] After trial, this court issued a post-trial opinion granting Elting's request for a custodian and appointed Robert Pincus as Custodian of TransPerfect.[4]

In July 2016, this court entered an order implementing the Custodian's recommendation that TransPerfect be sold through a modified auction.[5] The Delaware Supreme Court affirmed the Sale Order on February 13, 2017.[6]

The Sale Order was implemented to empower the Custodian to "oversee[] a judicially ordered sale of the Company" and, in the interim, "to serve as a third director of

---

[2] *See* C.A. No. 2021-0065-KSJM, Docket ("Dkt.") 1 ("Compl.").

[3] *See generally* C.A. No. 9700-CM; C.A. No. 10449-CM. These civil actions were litigated together but never formally consolidated. For ease of reference, this decision cites to docket entries in C.A. No. 9700-CM only, though most of the filings also appear on the docket of C.A. No. 10449-CM.

[4] *See In re Shawe & Elting LLC*, 2015 WL 4874733, at *41.

[5] *See* Sale Order.

[6] *See Shawe v. Elting*, 157 A.3d at 169.

the Company with the authority to vote on any matters on which Mr. Shawe and Ms. Elting cannot agree and which rise to the level that he deems to be significant to managing the Company's business and affairs."[7]

The Sale Order granted the Custodian "full and exclusive authority to establish any and all procedures and processes for the Modified Auction that the Custodian, in his sole discretion, deem[ed] to be necessary or appropriate for purposes of carrying out the Modified Auction in an efficient manner."[8]

The Sale Order authorized the Custodian to, among other things:

- "[N]ot . . . share information about the sale process with the other directors or any other person if he, in his sole discretion, believe[d] that restrictions on the sharing of such information would be appropriate."[9]

- "[R]etain, in the name of the Company, one or more . . . advisors, including . . . attorneys . . ., as the Custodian, in his sole discretion, deem[ed] appropriate for purposes of carrying out the Modified Auction or a Sale Transaction."[10]

- "[E]nter into any agreements with such . . . advisors, in the name of the Company, and on terms that he, in his sole discretion, believe[d] are appropriate."[11]

- "[A]ct through and in the name of the Company to carry out his duties."[12]

---

[7] Sale Order at *1, ¶ 10.

[8] *Id.* ¶ 1.

[9] *Id.* ¶ 6.

[10] *Id.* ¶ 7.

[11] *Id.*

[12] *Id.* ¶ 9.

The Sale Order made the Custodian's actions "binding upon the directors, stockholders, officers, employees, consultants and agents of the Company, all of whom shall cooperate fully with the Custodian in the performance of his duties under the Order."[13]

The Sale Order also directed that the Custodian shall "not be subject to the direction or control of any corporate constituency and shall not be required to take any course of action that any corporate constituency may favor or disfavor."[14]

The Sale Order further provided that "[a]ll actions, recommendations and decisions of the Custodian shall be presumed to have been made on an informed basis, in good faith, and in the honest belief that such actions, recommendations and decisions were in the best interests of the Company."[15]

The Sale Order required the Custodian to obtain court approval to pay himself and his advisors and established a process for doing so.[16]

### B. The Collateral Litigation

Following the entry of the Sale Order, as this court previously found, Shawe "commenced an aggressive campaign of collateral litigation, the targets of which included Elting, her husband, her advisors, and the Custodian, among others."[17]

---

[13] *Id.* ¶ 12.

[14] *Id.* ¶ 8.

[15] *Id.* ¶ 15.

[16] *See id.* ¶ 14.

[17] *In re TransPerfect Glob., Inc.*, 2018 WL 904160, at *1.

### 1. The Section 211 Action

In February 2017, after the Supreme Court affirmed the Sale Order, Shawe's mother made two proposals to Elting that would provide her a proxy "as part of a purported effort to break the stockholder deadlock."[18] After Elting rejected the second proposal, Ms. Shawe sued TransPerfect under 8 *Del. C.* § 211(c) to compel TransPerfect to hold an annual meeting of its stockholders (the "Section 211 Action").[19]

Ms. Shawe sought relief that was highly unusual for a claim under Section 211, a statutory provision that allows a stockholder or director to petition the court to "summarily order [an annual stockholder] meeting to be held."[20] Rather than limit her request to an order for an annual stockholder meeting, Ms. Shawe asked the court to change the Company's capital structure by requiring it to issue the remaining authorized, unissued shares of the Company's stock pro rata to the current stockholders before the requested meeting.[21]

On April 25, 2017, Elting moved to enforce the Sale Order and for sanctions on the grounds that Ms. Shawe initiated the Section 211 Action for the purpose of ending the sale process and removing the Custodian in violation of the Sale Order.[22]

---

[18] *Shawe v. TransPerfect Glob., Inc.*, 2017 WL 3877176, at *1 (Del. Ch. Sept. 5, 2017).

[19] *See id.*

[20] 8 *Del. C.* § 211(c).

[21] *Shawe v. TransPerfect Glob., Inc.*, 2017 WL 3877176, at *1.

[22] *See id.* at *1–2.

On April 26, 2017, the Custodian retained Ross Aronstam & Moritz LLP ("RAM") to represent TransPerfect in the Section 211 Action.[23] The engagement letter, which was signed by the Custodian on behalf of TransPerfect, provided that RAM would "take direction from [the Custodian] on behalf of the Company."[24]

That same day, the Custodian filed a letter in response to the filing of the Section 211 Action.[25] He argued that Ms. Shawe's requested relief was inconsistent with the Sale Order and seemed futile. He further argued that convening a stockholders' meeting on the timeline requested by Ms. Shawe would inject uncertainty into the sale process.[26]

On May 17, 2017, RAM filed an opposition on behalf of the Company to Ms. Shawe's motion for expedited proceedings.[27]

In August 2017, the court granted Elting's motion to enforce the Sale Order and denied Ms. Shawe's motion to expedite, finding that:

- The "'clear and admitted objective of the Section 211 Action is to remove the Custodian and to end the sale process, which is inconsistent with the Sale Order's directive to cooperate fully with the Custodian and to not impede or undermine, or intend to impede or undermine, the sale process;'" and

- "[C]onvening a stockholders' meeting at this juncture could jeopardize the sale process, which is expected to conclude in the near future."[28]

---

[23] *See* Compl. Ex. A (211 Engagement Letter).

[24] *Id.* at 1.

[25] *See In re TransPerfect Glob., Inc.*, 2017 WL 3499921, at *3 (Del. Ch. Aug. 4, 2017).

[26] *See id.* at *5.

[27] *See* C.A. No. 2017-0306-AGB, Dkt. 10 (Opp'n to Mot. for Expedited Proceedings).

[28] *Shawe v. TransPerfect Glob., Inc.*, 2017 WL 3877176, at *2 (quoting *In re TransPerfect Glob., Inc.*, 2017 WL 3499921, at *4).

7

As a result of these findings, the court "conclude[d] that [TransPerfect] need not respond to the Section 211 Action at this stage."[29]  Shortly after, the court denied Ms. Shawe's application for an interlocutory appeal.[30]

RAM had no further involvement in the Section 211 Action, which Ms. Shawe voluntarily dismissed with prejudice on May 9, 2018.[31]

### 2.     The Section 220 Action

On July 14, 2017, counsel for Ms. Shawe demanded that the Custodian provide "monthly itemized billing records as generated by your firm's accounting department that reflect the services performed by you as Custodian and your counsel since January 1, 2017," as well as itemized billing records for the Custodian's advisors.[32]  The Custodian declined this demand.[33]  Ms. Shawe subsequently served a demand pursuant to Section 220 of the DGCL on September 12, 2017.[34]

Although this court was already reviewing and approving payment of each invoice the Custodian or his advisors submitted, the Section 220 demand sought books and records "to evaluate the propriety of the amounts included in recent invoices from the Custodian and his advisors to be paid by the Company, pursuant to the . . . Sale Order."[35]

---

[29] *In re TransPerfect Glob., Inc.*, 2017 WL 3499921, at *5.

[30] *See Shawe v. TransPerfect Glob., Inc.*, 2017 WL 3877176, at *5.

[31] *See* C.A. No. 2017-0306-AGB, Dkt. 37 (Stipulation and [Proposed] Order of Dismissal).

[32] C.A. No. 2017-0697-AGB, Dkt. 1 ("220 Compl.") Ex. 5 at 3.

[33] *See* 220 Compl. Ex. 6 at 2–4.

[34] *See* 220 Compl. Ex. 9.

[35] *Id*. at 1.

8

The Custodian retained RAM on September 15, 2017, this time to represent TransPerfect in connection with the Section 220 demand and any follow-on enforcement action.[36] The Custodian signed this engagement letter, which again provided that RAM would "take direction from [the Custodian] on behalf of the Company."[37]

RAM sent a letter to Ms. Shawe's counsel, advising that TransPerfect was refusing the demand because it did "not provide credible evidence of wrongdoing, mismanagement, or corporate waste," and it appeared that "Ms. Shawe's articulated purposes for the demand are pretextual."[38]

Ms. Shawe then sued TransPerfect under Section 220 (the "Section 220 Action").[39] On October 24, 2017, RAM filed an answer on behalf of TransPerfect.[40] RAM had no further involvement in the Section 220 Action.

A month later, Shawe emerged as the winning bidder of the sale process, and Ms. Shawe asked the court to "hold in abeyance any further proceedings in the action, pending the Court's approval of the" sale.[41] On May 9, 2018, Ms. Shawe voluntarily dismissed the Section 220 Action with prejudice.[42]

---

[36] *See* Compl. Ex. B (220 Engagement Letter).

[37] *Id.* at 1.

[38] 220 Compl. Ex. 11.

[39] *See* 220 Compl.

[40] *See* C.A. No. 2017-0697-AGB, Dkt. 3 (220 Answer).

[41] C.A. No. 2017-0697-AGB, Dkt. 5 at 1.

[42] *See* C.A. No. 2017-0697-AGB, Dkt. 9 (Stipulation and [Proposed] Order of Dismissal).

## C. The Final Order

In connection with the sale of TransPerfect to Shawe, the court entered the Final Order.[43]  The Final Order incorporated broad releases and restrictions, which among other things, prohibited the parties designated as "Releasors" from suing, "directly or indirectly or on behalf of any Person (including through any derivative action)," TransPerfect's "past and present agents . . . [and] attorneys."[44]  The Final Order did not name TransPerfect as a Releasor.

## D. Praise For The Custodian

After Shawe emerged as the winning bidder, Elting argued that the Shawes' relentless campaign of ancillary litigation "created a conflict of interest for the Custodian," and thus the court could not "defer to the Custodian's discretion."[45]

In response, Shawe heaped praise upon the Custodian, his independence, and the integrity of the sale process.  Shawe argued in briefing before this court that:

- "The Custodian's conduct of the auction process . . . [is] well within the very broad discretion granted by the Court . . . ."[46]

- Elting's argument that the Custodian "abdicate[d] his duties to this Court" was "bafflingly fanciful."[47]

---

[43] *See In re TransPerfect Glob., Inc.*, 2018 WL 992994, at *7 (Del. Ch. Feb. 15, 2018) ("Final Order").

[44] *Id.* ¶ 3(b).

[45] C.A. No. 9700-CM, Dkt. 1219 (Elting's Objs. to the Proposed Sale) at 26–27.

[46] C.A. No. 9700-CM, Dkt. 1226 (Shawe's Resp. to Elting's Objs. to the Proposed Sale) at 2.

[47] *Id.* at 11.

- "The Custodian . . . exercised careful oversight . . . ."[48]

- The notion that the Custodian suffered from a conflict was "false" and "facially implausible."[49]

At oral argument, Shawe's counsel remarked, "Did the custodian abuse his discretion? Was he arbitrary and capricious? Was he unreasonable? . . . I think the answer to that has to be no."[50]

In approving the Securities Purchase Agreement ("SPA") governing the sale of TransPerfect, the court adopted Shawe's position. The court too lauded the Custodian for "deftly and firmly handl[ing] a challenging assignment."[51]

On appeal from the Final Order, Elting again attacked the Custodian's process, and Shawe again responded by defending the Custodian. In his appellate brief, Shawe extolled the Custodian's "integrity" and asserted that the record "overwhelmingly demonstrated that [the Custodian] had no conflict of interest."[52]

Relying on "the parties' briefs and the record on appeal," the Delaware Supreme Court affirmed this court's decision, adopting Shawe's position that the Custodian "ably performed his duties" and "did not abuse his discretion in connection with the sales process."[53]

---

[48] *Id.* at 19.

[49] *Id.* at 29.

[50] C.A. No. 9700-CM, Dkt. 1245 (Jan. 17, 2018 Hr'g Tr.) 176:7–12.

[51] *In re TransPerfect Glob., Inc.*, 2018 WL 904160, at *2–3.

[52] No. 90,2018, Dkt. 25 at 1, 26–27.

[53] *Elting v. Shawe*, 185 A.3d 694, 2018 WL 2069065, at *1 (Del. May 3, 2018) (TABLE).

The sale of TransPerfect closed on May 7, 2018. Through the transaction, Shawe acquired 99% of TransPerfect stock and his mother retained the other 1%.

## E.    Jurisdictional Provisions of the Sale Order and Final Order

The Sale Order and the Final Order each contain provisions granting this court exclusive jurisdiction over certain matters.

Paragraph 15 of the Sale Order states, in relevant part, that "[n]o party to the Actions, and no other person acting or purporting to act as a director, stockholder, officer, employee or agent of the Company shall institute or prosecute any actions or proceedings in any forum other than this Court challenging any action, recommendation or decision by the Custodian."[54]

Paragraph 10 of the Final Order states, in relevant part, that

> Without impacting the finality of this Order and judgment, the Court retains continuing and exclusive jurisdiction over the parties to the Actions for all matters relating to the Actions, including the administration, interpretation, effectuation or enforcement of the Sale Agreement and the Related Agreements, and all orders of the Court in Civil Action Nos. [9700-CM] and [10449-CM].[55]

## F.    The New York Action

On August 18, 2020, TransPerfect sued RAM and the RAM partner who represented TransPerfect in the Section 211 and Section 220 Actions, Garrett Moritz (together, "Defendants") in New York for malpractice (the "New York Action"). TransPerfect alleged that Defendants acted improperly "by reason of disloyalty and breach of ethics

---

[54] Sale Order ¶ 15.

[55] Final Order ¶ 10.

12

rules and fiduciary duties" to the Company as a result of "having been retained by, and taken directions from, a conflicted agent for TransPerfect," by which it meant the Custodian.[56] The complaint included claims for damages as well as equitable remedies.

On October 19, 2020, Defendants moved to intervene in the original TransPerfect litigation for the limited purpose of redirecting the New York Action to this venue via contempt motion.[57] The court granted Defendants leave to intervene and Defendants filed their contempt motion, arguing that TransPerfect and Shawe, as its controller, had violated the jurisdictional provisions of the Final Order by filing the New York Action.[58]

On January 11, 2021, TransPerfect amended its complaint in the New York Action to drop its claims for equitable relief.[59]

Two weeks later, on January 25, 2021, TransPerfect filed this action, asserting claims nearly identical to those filed in the New York Action. In opposition to Defendants' contempt motion, TransPerfect argued that it was seeking only legal relief and thus the Court of Chancery lacked jurisdiction over the suit, rendering the exclusive jurisdiction provisions of the Sale Order and Final Order inapplicable.[60]

---

[56] Dkt. 13 ("Defs.' Opening 12(b)(6) Br.") Ex. 1 (Original N.Y. Compl.) ¶ 1.

[57] *See* C.A. No. 9700-CM, Dkt. 1511 (Mot. to Intervene).

[58] *See* C.A. No. 9700-CM, Dkt. 1539 (Contempt Mot.).

[59] *See* Defs.' Opening 12(b)(6) Br. Ex. 2 (Am. N.Y. Compl.).

[60] *See* C.A. No. 9700-CM, Dkt. 1569 (TransPerfect & Shawe's Joint Opp'n to Contempt Mot.).

On April 14, 2021, the court concluded that TransPerfect "violated the plain terms" of the Sale Order's jurisdictional provision "in a meaningful way."[61] The court nevertheless declined to enter a contempt order at the time because, "[g]iving the Company the benefit of the doubt," it had stayed the New York Action and filed this litigation, "reflect[ing] an effort to remedy the consequences of its non-compliance with the exclusive jurisdiction provision in the Sale Order and obviate the need for a finding of contempt and the imposition of any sanction."[62]

Also on April 14, 2021, the court entered an order discharging the Custodian (the "Discharge Order").[63] The Discharge Order remedied the "drafting mistake" that "the bar orders in the Final Order do not list the Company specifically by name as subject to the bar orders even though the language in [the] SPA expressly contemplated that would be the case."[64] To do so, the Discharge Order expressly named "the Company" as a "Releasor."[65] Paragraph 10 of the Discharge Order clarified that all Releasors, including TransPerfect and the Shawes, are "forever barred, enjoined and restrained . . . from . . . pursuing . . . any

---

[61] *In re TransPerfect Glob., Inc.*, 2021 WL 1415474, at *8–9 (Del. Ch. Apr. 14, 2021).

[62] *Id.* at *9. TransPerfect and Shawe moved for clarification or reargument, seeking to have the court hold that its ruling that the New York Action violated the Sale Order's exclusive jurisdiction provision was dicta without preclusive effect. *See* C.A. No. 9700-CM, Dkt. 1602 (Mot. for Clarification or Reargument). The court denied the motion, explaining that "the court took great care to explain the basis for its findings and the assumptions on which they were made." C.A. No. 9700-CM, Dkt. 1606 (Order Denying Mot. for Clarification or Reargument).

[63] *See In re TransPerfect Glob., Inc.*, 2021 WL 1415772, at *1 (Del. Ch. Apr. 14, 2021) ("Discharge Order").

[64] *In re TransPerfect Glob., Inc.*, 2021 WL 1401518, at *3 n.20.

[65] *See* Discharge Order ¶ 9.

14

claim, action, suit or proceeding, of any nature whatsoever, arising out of, resulting from or relating to, directly or indirectly, Mr. Pincus's service as Custodian of the Company."[66] On May 14, 2021, TransPerfect and Shawe filed a notice of appeal of the Discharge Order.[67]

Defendants moved to dismiss the complaint in this action on March 31, 2021, for failure to state a claim. In an unusual twist, TransPerfect also moved to dismiss its own complaint, arguing that this court lacks subject matter jurisdiction. The motions were fully briefed as of August 2, 2021,[68] and the court heard oral argument on December 6, 2021.[69]

## II. LEGAL ANALYSIS

None of the parties to this action want it to proceed in this court. Unfortunately, the court's task is not so simple as to grant a stipulation of dismissal without opinion and move on to a case with at least one litigant that wants to be here. The legal basis for dismissing this case could affect the New York Action.[70] Under Delaware law, "lack of subject matter jurisdiction is a question of justiciability not involving an adjudication on the merits,"[71] and therefore, "[o]rdinarily, a dismissal for lack of subject matter jurisdiction . . . will not

---

[66] *Id.* ¶ 10.

[67] *See* C.A. No. 9700-CM, Dkt. 1619.

[68] *See* Dkt. 9 ("Pl.'s Opening SMJ Br."); Defs.' Opening 12(b)(6) Br.; Dkt. 14 ("Pl.'s Suppl. Opening SMJ Br."); Dkt. 19 ("Defs.' Answering SMJ Br."); Dkt. 20 ("Pl.'s Answering 12(b)(6) Br."); Dkt. 23 ("Pl.'s Reply SMJ Br."); Dkt. 24 ("Defs.'Reply 12(b)(6) Br.").

[69] *See* Dkt. 34 ("Oral Arg. Tr.").

[70] *See Appriva S'holder Litig. Co., LLC v. ev3, Inc.*, 937 A.2d 1275, 1284 (Del. 2007) (observing that "whether a motion to dismiss is based upon subject matter jurisdiction or upon failure to state a claim is a question having important implications").

[71] *Edler v. El Di, Inc.*, 1997 WL 364049, at *7 (Del. Super. Ct. Apr. 24, 1997).

15

operate as a final decree that bars later claims."[72] By contrast, dismissal for failure to state a claim will typically be granted with prejudice to the dismissed claims.[73] Thus, granting TransPerfect's motion to dismiss could free TransPerfect to pursue the New York Action. Granting Defendants' motion to dismiss could have the opposite effect. If both motions are denied, obviously, this action will continue to proceed in this court. This decision turns first to the gating issue of subject matter jurisdiction.

### A.    This Court Has Subject Matter Jurisdiction Over The Complaint.

As Delaware's Constitutional court of equity, the Court of Chancery has limited subject matter jurisdiction. As the rule is traditionally articulated, the court can acquire subject matter jurisdiction over a case in three ways: "(1) one or more of the plaintiff's claims for relief is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute."[74] When denying Defendants' contempt motion, the court identified a fourth basis for subject matter

---

[72] *RBC Cap. Mkts., LLC v. Educ. Loan Tr. IV*, 87 A.3d 632, 644 (Del. 2014).

[73] *See* Ct. Ch. R. 15(aaa) (requiring that, if the court "concludes that [a] complaint should be dismissed under Rule 12(b)(6) . . . such dismissal shall be with prejudice . . . unless the Court, for good cause shown, shall find that dismissal with prejudice would not be just under all the circumstances"); *Sciabacucchi v. Malone*, 2021 WL 3662394, at *3 (Del. Ch. Aug. 18, 2021) (discussing the rule); *see also Branson v. Exide Elecs. Corp.*, 625 A.2d 267, 269 (Del. 1993) ("'A dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an appropriate forum, whereas a dismissal for failure to state a claim upon which relief can be granted is with prejudice.'" (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963))).

[74] *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004).

jurisdiction: "It is well-established that 'the Court of Chancery has jurisdiction to enforce its own orders.'"[75]

The foundational premise of TransPerfect's motion to dismiss for lack of subject matter jurisdiction is that TransPerfect's malpractice claim pending in New York is purely legal in nature and not within any subject matter conferred by statute. TransPerfect is correct that, ordinarily, this court declines jurisdiction over legal malpractice claims.[76]

The analysis thus turns to whether TransPerfect's claim falls within the court's inherent authority to enforce its own orders.[77] Chancellor Bouchard already resolved this question in the affirmative. In his April 14, 2021 letter opinion deciding Defendants' contempt motion, the former Chancellor noted that "TransPerfect's theory of liability against [Defendants] in the New York Action is inextricably intertwined with the actions and decisions of the Custodian whose instructions the Intervenors followed."[78] For this reason, the court held that TransPerfect's filing of the New York Action violated paragraph 15 of the Sale Order in a "meaningful" way, because the New York Action "directly implicates the Court of Chancery's authority to appoint and supervise custodians to address

---

[75] *In re TransPerfect Glob., Inc.*, 2021 WL 1415474, at *7 (footnote omitted).

[76] *See Sokol Hldgs., Inc. v. Dorsey & Whitney, LLP*, 2009 WL 2501542, at *5 (Del. Ch. Aug. 5, 2009) (declining to exercise jurisdiction over a legal malpractice claim that was pled as a claim for breach of fiduciary duty).

[77] *See Aveta Inc. v. Bengoa*, 986 A.2d 1166, 1183 (Del. Ch. 2009) (declaring that "[c]ourts have inherent authority to enforce their own orders and judgments"); *Forsythe v. CIBC Empl. Priv. Equity Fund (U.S.) I, L.P.*, 2006 WL 846007, at *2 (Del. Ch. Mar. 22, 2006) (holding that the court "retains inherent authority to enforce its decisions, even in the absence of specific authorization by rule").

[78] *In re TransPerfect Glob., Inc.*, 2021 WL 1415474, at *9.

stockholder and board-level deadlocks under Section 226 of the Delaware General Corporation Law."[79]

To argue that the Chancellor's prior ruling does not resolve this issue, TransPerfect seizes on the Chancellor's act of merciful restraint in declining to find TransPerfect in contempt or impose sanctions.[80] Because the Chancellor exercised leniency, TransPerfect argues that it did nothing wrong. Yet, TransPerfect "cannot avoid the preclusive effect of [a] prior ruling[] simply because" the court treated it "more lenient[ly]" than it could have.[81] To hold otherwise would disincentivize the court from exercising restraint in sanctions matters when clemency would otherwise be appropriate and devalue the precious judicial resources that each of the court's rulings consumes.

In any event, a review of the Sale Order reveals that the Chancellor got it right. No court could possibly evaluate the propriety of Defendants' alleged actions or inactions without reference to the propriety of the Custodian's actions, recommendations, or decisions. And reference to the Custodian's actions, recommendations, and decisions necessarily runs back to the court document that empowered the Custodian—the Sale Order. The Sale Order covers the gamut from authorizing the Custodian "to act through and in the name of the Company," obligating Defendants to "cooperate fully with the

---

[79] *Id.*

[80] *See* C.A. No. 9700-CM, Dkt. 1602 (Mot. for Clarification or Reargument) ¶ 16; Pl.'s Suppl. Opening SMJ Br. at 16–18.

[81] *TR Invs., LLC v. Genger*, 2013 WL 603164, at *16 (Del. Ch. Feb. 18, 2013).

Custodian,"[82] and granting the Custodian the sole and express discretion "not to share information about the sale process with the other directors or any other person," which impliedly includes his fees in connection with that process.[83] Further, the Sale Order authorized the Custodian, "in his sole discretion," to "confer with corporate constituencies . . . concerning the sale process generally."[84] This broad language encompasses the Custodian's interactions with Defendants.

In an effort to avoid the implications of the broad language of the Sale Order, TransPerfect argues that the malpractice lawsuit need not implicate the Custodian's conduct. The argument can be summarized as follows:

- The Section 220 Action was filed by Ms. Shawe, a TransPerfect stockholder, to ascertain details about the fees the Company was paying the Custodian.

- The Company's interests, as payor of those fees, are aligned directly against the Custodian, as payee.

- Defendants should have recognized that this constituted a conflict of interest and obtained the Company's informed consent before acting on the Custodian's instruction to defend the Company against the Section 220 Action.

- This is Defendants' decision and failure, *not* the Custodian's, and the court should therefore find that the New York Action does not challenge an "action, recommendation or decision by the Custodian."[85]

---

[82] Sale Order ¶¶ 9, 12.

[83] *Id.* ¶ 6; *see also Kimmel v. Wilm. Tr. Co.*, 287 A.2d 760, 761 (Del. Ch. 1972) (finding jurisdiction where it would not otherwise lie over "a dispute between trustees as to the right to commissions earned by virtue of an appointment made by this Court" because "this Court's order created the fact situation on which the dispute is based.").

[84] Sale Order ¶ 8.

[85] *See* Pl.'s Suppl. Opening SMJ Br. at 5, 10–11 (citations omitted); Pl.'s Reply SMJ Br. at 3–7.

19

This argument is flawed as well. Setting aside the fact that the Custodian was authorized to provide the Company's consent under the Sale Order, paragraph 15 of the Sale Order provides that "[a]ll actions, recommendations and decisions of the Custodian shall be presumed to have been made on an informed basis, in good faith, and in the honest belief that such actions, recommendations and decisions were in the best interests of the Company."[86] Thus, for a reviewing court to determine that the Custodian's alleged conflict existed, the court would first have to overcome the presumptions of paragraph 15.

As a last-ditch argument against the court's exercise of subject matter jurisdiction, TransPerfect contends that being forced to litigate its malpractice claim in this court would deprive it of its right to a jury trial and "effectively put [TransPerfect] out of court, a clear deprivation of [TransPerfect's] due process right to access to court to pursue redress for its civil claims."[87] Once again, TransPerfect's arguments are without merit. As the court stated in *FirstString*, "the law is settled, and the outer boundary of this court's equitable jurisdiction also delineates the scope of a right to trial by jury in civil actions."[88] The reasoning of *FirstString* logically extends to jurisdiction arising from a court order. Thus, once the court has properly exercised jurisdiction over a matter, "factual determinations

---

[86] Sale Order ¶ 15.

[87] Pl.'s Suppl. Opening SMJ Br. at 18–19.

[88] *FirstString Rsch., Inc. v. JSS Med. Rsch. Inc.*, 2021 WL 2182829, at *10 (Del. Ch. May 28, 2021).

for which a [party] could traditionally insist on a jury at law are, in Chancery, reserved to the Court."[89]

For the foregoing reasons, the court may properly exercise subject matter jurisdiction over this action.

### B. The Complaint Fails To State A Claim.

Having found subject matter jurisdiction over this action, the court turns to Defendants' motion to dismiss the complaint for failure to state a claim upon which relief may be granted under Court of Chancery Rule 12(b)(6).

When considering a motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[90] The court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[91]

---

[89] *Preston Hollow Cap. LLC v. Nuveen LLC*, 216 A.3d 1, 11 (Del. Ch. 2019). Moreover, technically, asserting jurisdiction over this matter does not necessarily deprive TransPerfect of its right to trial by jury because the court has the discretion to empanel a jury to try discrete factual issues when appropriate. *See* 10 *Del. C.* § 369.

[90] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[91] *Price v. E.I. du Pont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

TransPerfect's claim for breach of duty constituting professional negligence is the same as a claim for legal malpractice.[92] "[T]o succeed on a claim for legal malpractice, the plaintiff must establish the following elements: a) the employment of the attorney; b) the attorney's neglect of a professional obligation; and c) resulting loss."[93]

TransPerfect has failed to allege facts sufficient to establish the second element—that Defendants neglected a professional obligation.

TransPerfect contends that Defendants neglected their professional obligations by violating Rules 1.7 and 8.4 of the Delaware Rules of Professional Conduct (the "Delaware Rules").

TransPerfect's theory under Rule 1.7 fails as a matter of law. Rule 1.7 prevents a Delaware lawyer from "represent[ing] a client if the representation involves a concurrent conflict of interest."[94] According to TransPerfect, the "concurrent conflict" arose from the Custodian's receipt of fees from TransPerfect.

The Sale Order empowered the Custodian to hire counsel for TransPerfect. The Sale Order unambiguously empowered the Custodian to "act through and in the name of the Company to carry out his duties"[95] and to retain counsel to advise as to those duties.[96]

---

[92] *See Sokol Hldgs.*, 2009 WL 2501542, at *4 (discussing claims for professional negligence and legal malpractice interchangeably).

[93] *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 740 n.14 (Del. 2020) (Vaughn, J., dissenting) (citation omitted).

[94] Del. Lawyers' R. Prof'l Conduct 1.7(a).

[95] Sale Order ¶ 9.

[96] *See id.* ¶ 7 (stating that "[t]he Custodian is authorized to retain, in the name of the Company, one or more consultants or advisors, including . . . attorneys").

22

Those duties included "full and exclusive" authority regarding the Sale Process.[97]  The Custodian retained Defendants under paragraph 7 of the Sale Order to oppose lawsuits that Ms. Shawe brought against the Company under Sections 211 and 220 of the DGCL.  The Custodian viewed those actions as threats to the sale process that this court charged him with overseeing.[98]  The Custodian's instruction that RAM oppose Ms. Shawe's books and records request was an exercise of his discretion under paragraph 6 of the Sale Order "not to share information about the sale process with the other directors or any other person if he, in his sole discretion, believes that restrictions on the sharing of such information would be appropriate."[99]

The Sale Order also required that the Custodian be paid pursuant to a judicially supervised process.  The Sale Order provides that "[t]he Custodian *shall be compensated* at the usual hourly rate that he charges as a partner of the Firm."[100]  The Sale Order goes on to establish a monthly process for court review and approval of the Custodian's fees.[101]

Because the Sale Order both empowered the Custodian to hire counsel for TransPerfect and required that the Custodian be paid fees, it is not reasonably conceivable that payment of the Custodian's fees gave rise to a "concurrent conflict of interest"

---

[97]  *See, e.g., id.* ¶¶ 1–5, 8.

[98] *See* C.A. No. 2017-0306-AGB, Dkt. 25 ¶ G; C.A. No. 2017-0697-AGB, Dkt. 1, Ex. 6 at 2–3.

[99] Sale Order ¶ 6.

[100] *Id.* ¶ 14 (emphasis added).

[101] *See id.*

preventing the Custodian from retaining Defendants to represent TransPerfect under Rule 1.7.

TransPerfect's theory under Rule 8.4 fares no better. Rule 8.4(a) provides that "[i]t is professional misconduct for a lawyer to: . . . violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so or do so through the acts of another."[102]

TransPerfect argues that Defendants should have informed other constituents of the Company about the alleged conflict of interest. It relatedly suggests that Defendants should have taken into account whether TransPerfect's stockholders or management disagreed with the Custodian's instructions. But Defendants had no ethical obligation to undertake this action. Generally speaking, "where an attorney is hired by a corporation, that attorney owes a duty to the corporate entity, not to the individual directors, officers and shareholders."[103]  Under Delaware Rule 1.13(b), a lawyer's obligation to provide information to other corporate constituencies is only triggered when the action the corporate agent wishes to take is a "violation of a legal obligation to the organization, or a violation of law which reasonably might be imputed to the organization, and is likely to result in substantial injury to the organization."[104]  TransPerfect has not pled facts that satisfy this standard.

---

[102] Del. Lawyers' R. Prof'l Conduct 8.4(a).

[103] *In re Shoe-Town, Inc. S'holders Litig.*, 1990 WL 13475, at *7 (Del. Ch. Feb. 12, 1990).

[104] Del. Lawyers' R. Prof'l Conduct 1.13(b).

24

The Custodian likewise had no obligation to inform or confer with TransPerfect's constituents about his alleged "conflict." The Sale Order granted the Custodian "sole discretion" to determine whether to "confer with corporate constituencies."[105] The Sale Order also provided that the Custodian was not "subject to the direction or control of any corporate constituency and shall not be required to take any course of action that any corporate constituency may favor or disfavor."[106] The Sale Order made the Custodian's decisions "binding upon the directors, stockholders, officers, employees, consultants and agents of the Company."[107]

Moreover, Defendants were obligated by the Delaware Rules to abide by the Custodian's decisions. Delaware Rule 1.2(a) requires that "a lawyer shall abide by a client's decisions concerning the objectives of representation."[108] "Because of its lack of a body and mind, a corporation only can act through human agents."[109] Accordingly, Rule 1.13(a) provides that "[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents."[110] Thus, "[w]hen constituents of the organization make decisions for it, the decisions ordinarily must be

---

[105] Sale Order ¶ 8.

[106] *Id.*

[107] *Id.* ¶ 12.

[108] Del. Lawyers' R. Prof'l Conduct 1.2(a); *see also Red Dog v. State*, 625 A.2d 245, 247 (Del. 1993) (explaining that "decisions relating to the objectives of litigation [are] essentially [those] of the client, whose decision the attorney must respect").

[109] *In re Dole Food Co. S'holder Litig.*, 110 A.3d 1257, 1261 (Del. Ch. 2015).

[110] Del. Lawyers' R. Prof'l Conduct 1.13(a).

accepted by the lawyer even if their utility or prudence is doubtful."[111]  Defendants had one

client: TransPerfect.   The Sale Order made the Custodian TransPerfect's exclusive

authorized agent empowered to direct counsel retained in connection with the sale process.

Defendants thus acted appropriately in following the instructions of the Custodian.

For the foregoing reasons, it is not reasonably conceivable that Defendants have

breached a professional obligation, and TransPerfect has therefore failed to state a claim

for legal malpractice upon which relief can be granted.

## III.   CONCLUSION

In summary, the court may properly exercise subject matter jurisdiction over this

action, and TransPerfect's motion to dismiss is DENIED.[112]  TransPerfect's complaint fails

to state a claim upon which relief can be granted, and therefore, Defendants' motion to

dismiss is GRANTED.

---

[111] Del. Lawyers' R. Prof'l Conduct 1.13 cmt. 3.

[112] Defendants filed a motion to consolidate this action with the primary TransPerfect litigation, calling to mind the clean-up doctrine as an additional basis for the court's exercise of subject matter jurisdiction over this dispute.  *See* Dkt. 18, Mot. to Consolidate. TransPerfect opposed the motion, arguing that consolidation would "end-run" the issue of subject matter jurisdiction and prejudice its rights, making arguments similar to those rejected in this decision.  Dkt. 28, Opp'n to Mot. to Consolidate ¶¶ 1–7.  While the issue of consolidation has now been mooted by the dismissal of this action, the court is satisfied that consolidation with the primary TransPerfect litigation would have been appropriate.